**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

MATTHEW ROBERTS,                                                      PLAINTIFF
#161985

v.                                        4:22CV00788-KGB-JTK

JOHN STALEY, et al.                                                   DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Kristine G. Baker.   Any party may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.   By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

### I.    Introduction

Matthew Roberts ("Plaintiff") is in custody at the Varner Unit of the Arkansas Division of Correction.   Plaintiff's claims in this case arise from incidents that took place while he was housed in the Lonoke County Detention Center (the "Detention Center").   Specifically, Plaintiff alleged Lonoke County Sheriff John Staley, Jail Administrator Kristie Flud, Chief Deputy Kevin McCoy, and Sergeant Chad Merritt failed to protect him from a violent assault by another inmate.   (Doc. No. 4).

On March 9, 2023, the Court recommended Plaintiff's claims against Defendants Flud, McCoy, and Merritt be dismissed for lack of service. (Doc. No. 19). The Recommendation remains pending, and these Defendants still have not been served.

On December 11, 2023, Defendant John Staley filed a Motion for Summary Judgment on the merits of Plaintiff's claims, Brief in Support, and Statement of Facts. (Doc. Nos. 31-33, 36). On December 13, 2023, the Court directed Plaintiff to respond to Defendant Staley's Motion within thirty (30) days, or by January 12, 2024. (Doc. No. 35). The Court advised Plaintiff that failure to comply with the Order would result in all of the facts set forth in Defendant Staley's summary judgment papers being deemed admitted, or the dismissal of the action without prejudice for failure to prosecute. (Id.)

Plaintiff has responded to Defendant Staley's Motion. (Doc. Nos. 39, 43, 44).

Plaintiff has also filed a Motion to Correct Amended Complaint. (Doc. No. 41). Defendant Staley has not filed a response, and the time for doing so has passed.

After careful consideration of the record before me, and for the reasons explained below, I recommend Plaintiff's Motion to Correct Amended Complaint be denied and Defendant Staley's Motion for Summary Judgment be granted.

## II.    Plaintiff's Motion to Correct Amended Complaint

A court should "freely give leave [to amend a pleading] when justice so requires." FED. R. CIV. P. 15(a)(2). While leave to amend should be freely given, a court may deny a motion to amend if the amendment would be futile. Hillesheim v. Myron's Cards & Gifts, Inc., 897 F.3d 953, 955 (8th Cir. 2018). "Denial of a motion for leave to amend on the basis of futility 'means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'" Zutz v.

<u>Nelson</u>, 601 F.3d 842, 850 (8th Cir. 2010).    Additionally, "frivolous claims are futile."    <u>Reuter</u>

<u>v. Jax Ltd., Inc.</u>, 711 F.3d 918, 922 (8th Cir. 2013).

The allegations in Plaintiff proposed amended complaint are, with very little exception, the

same as in Plaintiff's Amended Complaint.    (Doc. Nos. 4, 41).    The biggest difference is that

Plaintiff substituted Brandon Tounzen's name where Plaintiff earlier had referred to Chad Merritt.

(<u>Id</u>.).    In his proposed amended complaint, Plaintiff named as defendants John Staley, Kristie

Flud, and Brandon Tounzen; he sued each defendant in their personal and official capacities.    (<u>Id</u>

at 2).    Plaintiff's statement of claim reads:

> On Feb. 20th, 2021, Matthew Roberts was housed in F pod a max unit of Lonoke
> Co.    Deputy Brandon Tounzen put Matthew Roberts in his cell and left the 'bean
> hole' open.    Roberts asked for his bean hole to be closed but Mr. Tounzen refused.
> Tounzen let another inmate, Avery Ward, out of his cell into the day room area.
> Inmate Ward known violent, cleaning supplies were left in the pod unattended.
> Also Touznen left pod.    Inmate Ward was out of his cell used a broom handle
> 'strike' Roberts through the 'open' bean hole causing serious injury. Roberts had
> to be taken UAMS for surgery. Returned to the jail he was not allowed to use the
> proper grievance procedures because ship to UAMS then to ADC.    Sheriff John
> Staley and Jail Admin Kristie Flud failed to train and supervise Deputy Brandon
> Tounzen in proper procedures concerning conditions of confinement and protection
> from inmate-to-inmate assaults.    Deputy Brandon Tounzen was deliberately
> indifferent to the risk of leaving a violated offender in the dayroom area with
> cleaning supplies to use as weapons against inmates with their bean holes open.
> This is a violation of my 4th and 8th amendment United States Constitution rights.

(<u>Id</u>. at 4).

Plaintiff misidentified Tounzen by name in his operative Amended Complaint.    But the

facts of Plaintiff's claim remain the same in his proposed amended pleading.    In response to

Defendant Staley's Motion for Summary Judgment, Plaintiff submitted a Lonoke County Sheriff's

Office summary of facts of the incident.    The summary reads:

> On Monday February 22, 2021, at approximately 14:15 Detention Deputies were
> called to F Pod to look at an inmate that was bleeding.    Also contacted was medical
> Officer Gibson who also responded to F Pod.    Detention Deputies entered F Pod
> and OIC Tounzen went upstairs to F7 door.    Administrator Flud and Medical

Officer Gibson entered the room and inmate Roberts, Matthew was laying on bottom bunk with blood on his face.   Ambulance was called.   Flud then went to the office where the camera system monitors were located to watch the video.   In the video it shows inmate Richard Gilliam (a.k.a. Buck), take a wooden dust broom handle off and carry it upstairs and place it by F7 door then walk back downstairs. A few minutes later Inmate Avery Ward goes upstairs and stands by F7 door until Inmate Roberts comes to the bean hole (also known as the food tray slot).   At that time Inmate Ward sticks the metal end of the broom handle through the bean hole, and stabs Inmate Roberts in the eye.   Inmate Roberts was transported to the hospital for his injuries.   Inmate Roberts was seen at the emergency room, where it was determined that he would need surgery to repair injuries sustained by Inmate Ward's actions.

(Doc. No. 43 at 10).

The Court has viewed the video of the event.   (Doc. Nos. 33-7, 36).   The description of

the incident in the summary of facts is consistent with what the video reflects.

In response to Defendant Staley's Motion for Summary Judgment, Plaintiff also submitted

the statement of Tounzen.   The statement provides:

While in the tower Matthew Roberts tossed the mop bucket.   I went to F Pod and locked him down, and then went to intake.   Tower called me and said that I need to go to F Pod that Roberts was hurt and bleeding from the eye.   Once I got to him he was bleeding from around the eye.   I told the pod to lock down upon entry.   I called for medical and the jail admin to come back.   When they arrived it was decided to get EMS.   Southern paramedic arrived and transported to UAMS.

(Id. at 11).

Plaintiff's proposed amended complaint fails to state a claim on which relief may be

granted.   In Vandevender v. Sass, which involved an appeal from the district court's granting of

the defendants' motion to dismiss, the plaintiff was attacked by another inmate who wielded a

wooden board.   970 F.3d 972, 976 (8th Cir. 2020).   Inmates had unsupervised access to the

boards, which were stored in an industry area.   Id.   The plaintiff in Vandevender had not alleged:

(i) that [he] had previously been threatened by [the attacker] or by any other . . . inmate; (ii) that [the attacker] was known to be a violent, volatile inmate; (iii) that [he] and [the attacker] had previously argued or fought, been cellmates at any time,

4

> or even knew each other; or (iv) that either [he] or [the attacker] had recently been
> in protective custody or in a restrictive status such as administrative segregation.

Id.

The Court of Appeals considered the legitimate use of wooden boards and the lack of "specific allegations of enough similar prior assaults to create an inference of a pervasive risk." Id. at 975-977, 978.   The Court of Appeals concluded that the plaintiff's "Amended Complaint allege[d] no more than a surprise inmate-on-inmate attack."   Id. (quoting Beaton v. Tennis, 460 F. App'x 111, 114-15 (3d Cir. 2012) (unpublished) (affirming dismissal of § 1983 claim that prison employees failed to protect plaintiff from an assault with a padlock provided to inmates to secure their belongings, a type of assault that only occurred one or two times per year).

As in Vandevender, the cleaning supplies here served a legitimate purpose.

In his proposed amended complaint, Plaintiff described Avery Ward as "known violent." (Doc. No. 41 at 4).  But Plaintiff provided no details in the proposed amended complaint as to whether Ward was violent and volatile in the Detention Center.   In Plaintiff's sworn deposition, Plaintiff said that Ward "was in [the Detention Center] for murder."   (Doc. No. 40-1 at 33:5). But being in custody on a murder charge is not necessarily the equivalent of being a "violent, volatile inmate."   Vandevender, 970 F.3d at 976.   Nothing else in Plaintiff's deposition indicated that Ward had been volatile or violent in custody.

Further, Plaintiff failed to provide specific allegations of earlier, similar assaults by his attacker or by any inmate using a broom handle; Plaintiff has not alleged that any Defendant had specific knowledge of any such assaults.

Additionally, Plaintiff was locked in his cell when he was attacked through the open bean hole.   This factual distinction is relevant.

Considering <u>Vandevender</u>, Plaintiff's proposed amended complaint, and the fact that Plaintiff was locked inside his cell when he was attacked through the food slot, Defendant Tounzen would be entitled to qualified immunity on Plaintiff's claim. <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009); <u>Thurmond v. Andrews</u>, 972 F.3d 1007, 1012 (8th Cir. 2020) (internal citation omitted).

Further, a court may deny a motion to amend when the amended pleading clearly would not survive a motion for summary judgment. <u>Rang v. Hartford Variable Annuity Life Ins. Co.</u>, 908 F.2d 380, 383 (8th Cir. 1990) (internal citation omitted). Again, Plaintiff misnamed Tounzen as Chad Merritt, but the facts surrounding the incident remain unchanged. As explained below in connection with Defendant Staley's Motion for summary judgment, Plaintiff could not succeed on a conditions of confinement or failure to protect claim against Tounzen.

Plaintiff's failure to train and supervise claims against Defendants Staley and Flud, then, would fail because Plaintiff cannot establish an underlying violation, also as explained in more detail below.

Accordingly, Plaintiff's Motion to Amend should be denied.

## III.    Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. <u>See</u> <u>Dulany v. Carnahan</u>, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" <u>Webb v. Lawrence County</u>, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot

6

simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ." Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas. Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED. R. CIV. P. 56(e).

## IV.    Discussion

### A.    Plaintiff's Amended Complaint

In his Amended Complaint, Plaintiff sued Lonoke County Sheriff John Staley, Jail Administrator Kristie Flud, and Sergeant Chad Merritt in their official capacities only. (Doc. No. 4 at 1-2). Plaintiff's statement of claim reads, in its entirety:

> On Feb[ruary] 20th, 2021, [Plaintiff] was housed in a Max unit of the Lonoke Co. Jail. Sgt. Merritt put [Plaintiff] in his cell and left the "bean hole" open. [Plaintiff] asked for his "bean hole" to be closed but Sgt. Merritt refused. Sgt. Merritt let another inmate out of his cell into the dayroom area, an inmate known to be violent. Cleaning supplies were also left in the dorm unattended when Sgt. Merritt left the dorm. The inmate who was out of his cell used a broom handle to strike [Plaintiff] through the open "bean hole," causing serious bodily injury. [Plaintiff] had to be taken to UAMS for reconstructive surgery. When returned to the jail he was not allowed to use the proper grievance procedures on the jail kiosk or on paper before being shipped to A.D.C. Sheriff John Staley and Jail Administrator Kristie Flud failed to train and supervise Sgt. Merritt in proper procedures concerning conditions of confinement and protection from inmate-to-inmate assaults. Sgt. Merritt was deliberately indifferent to the risk of leaving a violent offender in the dayroom with cleaning supplies to use as weapons against

inmates with their "bean holes" open.   Had surgery at (UAMS Jones Eye Institution).

(Doc. No. 4 at 4).

## B.    Facts Not In Dispute

Plaintiff filed a Response.   (Doc. Nos. 39, 43, 44).   But in his Response, Plaintiff did not contest any material fact submitted by Defendant Staley.   (Id.).   Plaintiff also did not file a separate statement of fact contesting any of Defendant Staley's submitted indisputable material facts.   Accordingly, all material facts submitted by Defendant Staley (Doc. No. 33) are deemed admitted.   Local Rule 56.1(c); FED. R. CIV. P. 56(e).

## C.    Plaintiff's Deposition Testimony

Plaintiff described the February 20, 2021 incident during his deposition.   (Doc. No. 40-1 at 15-16).   Plaintiff testified, in part, as follows:

Question:       Okay. Let's talk about exactly what happened.   You just tell me in your words what happened on February, I guess, 20th, 2021.

Plaintiff:       I was – I was locked up, I was locked up in F Pod, and I was on the kiosk and I got some bad news, and it upset me pretty bad where – where I kind of lost control of my behavior and I took a ……

Plaintiff:       And I took – I took a mop bucket and I threw it at the – at the door in the dorm, in the block.   And when I did, Sergeant Merritt[1] and two other  deputies came in and told me to lockdown in my cell. And so I locked  down.   I told them – I told them to close the bean hole.   He ignored me,  left the bean hole open.   And I didn't know it, but the inmates, they were  mad about the mess I made and they were cussing.   And I stuck my head  out and when I did, one of the

---

[1] As mentioned above, the Court has recommended that Defendants McCoy, Flud and Merritt be dismissed for lack of service, and the recommendation remains pending.   (Doc. No. 19).   During Plaintiff's deposition, defense counsel told Plaintiff that "the sheriff doesn't – they have no record of a person by the name of Sergeant Merritt.   I think you identify him as Chad Merritt, but we don't have anybody with the last name Merritt. So is it possible it was someone else or that name is wrong?" (Doc. No 40-1 at 25:22-26:1).   Plaintiff insisted the employee's name was Chad Merritt.   (Id. at 26:3-26:7).   Plaintiff later determined that the individual in question was Brandon Tounzen.   (Doc. No. 43 at 10, 11).

inmates that I was having problems with, hit me, struck me through
the bean hole, the open bean hole.

(Id. at 15:19–15:25; 16:2-16:13).

Before Plaintiff threw the bucket, Plaintiff had been out in an open pod with other inmates
and had no problems.  (Id. at 19:12-20:6).

Plaintiff testified that another inmate was mad at Plaintiff for throwing the bucket.  (Id. at
18:10-18:14).  Plaintiff had problems with that inmate before, the same inmate who hit Plaintiff
with the broom, but Plaintiff never told anyone about those problems and never told anyone that
he needed to be separated from the other inmate.  (Id. at 20:2-20:14).  And Plaintiff himself had
never felt that he needed to be separated from the other inmate.  (Id. at 20:15-20:19).  Plaintiff
testified that he "didn't think [the other inmate] was capable of taking a broomstick and hitting
[him] in the face like that."  (Doc. No. 40-1 at 20:17-20:19).  Plaintiff agreed that the attack "was
a surprise to [Plaintiff]" and Plaintiff had "no reason at all to believe that was going to happen[.]"
(Id. at 20:20-20:25).

| Question: | And you said you didn't have any idea that was going to happen, had you ever – had that ever happened to anybody else that you had experienced before? Had you ever seen anybody hurt that way? |
|---|---|
| Plaintiff: | No. No, ma'am. |

(Id. at 29:3-29:8).

Plaintiff testified that the bean holes are supposed to be closed.  (Id. at 24:8-25:17).  He
also testified that Detention Center staff usually closed the bean holes when they were open.

| Question: | Okay. So how long had you been there before [the attack] happened? |
|---|---|
| Plaintiff: | Oh. I don't know. Maybe a month or two. |
| Question: | Okay. So during that month or two, you know, had they closed the bean hole every time you went into the cell? |

Plaintiff:      They're supposed to.

Question:      I'm not asking if they're supposed to.   I'm asking if they did that?

Plaintiff:      Yes. Yes, they did.   Every time – the only time – only time the bean
hole was open was when they served – when they served chow, they
feed us, they open and then they feed us, and close them and they
lock them down.

Now, like, at the time when I did that and when I threw the mop
bucket and that, all the doors were open, the bean holes were open,
all that, and when they locked me down in the cell, I asked Sergeant
Merritt to close my bean hole and he just ignored me and he just
kept on walking.

Question:      Why did you ask him to close the bean hole?

Plaintiff:      Because I'm antisocial.   I didn't want to deal with nobody. I had
bad news on the kiosk and I wanted to be alone and when they put
me in the cell, the bean hole was open and I could hear everyone
talking crap to me.

(Id. at 34:7-35:7).

Question:      Okay. Okay.   So but my question really was related to had this –
that had never happened before, [the bean hole] was always closed
when the door was closed, unless they were feeding you.   Correct?

Plaintiff:      Yes ma'am.

(Id. at 37:12-37:16; 38:17-39:3).

Question:      So the policy or practice, what they did every day, was actually what you
think they should have done. Right? They should have closed the door and
closed the bean hole?

Plaintiff:      Yes.

Question.      So this guy, whoever he is, Mr. Merritt, didn't follow the policy that day?

Plaintiff:      Yes, ma'am.

Question:      Okay.   And as far as you can recall, that was the first time and the only
time that he didn't follow the policy of closing the bean hole when [he]
closed the door?

| Plaintiff: | I don't – I don't know what he did throughout the jail. |

| Question: | I'm not asking you that.   I'm asking as far as you remember. |

| Plaintiff: | Yes, ma'am. |

(Id. at 39:9-39:25).

| Question: | Do you think it was – that he was being neglect[ful] that day or do you think that he was trying to set you up to get hurt? |

| Plaintiff: | No. I don't believe he was trying to set me up to get me hurt. Actually, the guy's not a bad dude. I've seen him – you know, I know him. I've been in that jail once or twice and I known him before. We get along. I think that day he just neglects. Just sometimes thet go to work, you know, doing their job right and some days they just don't give a damn. |

(Doc. No. 40-1 at 40:9-40:18).

Plaintiff explained that his failure to train and supervise claims against the Sheriff—Defendant Staley—were in connection with the bean hole being left open.   (Id. at 47:15-47:21).

### D.    Defendant Staley

In his Amended Complaint, the only claim Plaintiff raised against Defendant Staley and was failure to train and supervise.   Plaintiff clarified at his deposition that this claim was in connection with the open bean hole.

As the Court of Appeals for the Eighth Circuit has explained,

[t]he failure to train or supervise . . . must 'reflect[ ] a deliberate or conscious choice.' [] 'To be deliberately indifferent, an 'official must both be aware of facts from which the inference could be drawn that a substantial risk of [unconstitutional] harm exists, and he must also draw the inference.'

Sturgeon v. Faughn, 36 F.4th 804, 809 (8th Cir. 2022) (internal citations omitted).   To succeed on a failure to train or supervise claim, a plaintiff must show the supervisor:

(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to [the plaintiff]

Perkins v. Hastings, 915 F.3d 512, 524 (8th Cir. 2019) (internal citation omitted).

Plaintiff's failure to train and supervise claim, then, rests on Defendant Staley's knowledge of earlier unconstitutional acts. Plaintiff's allegations regarding the underlying unlawful act can be viewed as a conditions of confinement claim or a failure to protect claim.

a.    **Conditions of Confinement**

Plaintiff maintains Defendant Merritt "was deliberately indifferent to the risk of leaving a violent offender in the dayroom with cleaning supplies to use as weapons against inmates with their 'bean holes' open." (Doc. No. 4 at 4).

Plaintiff indicated that at the time of the incident giving rise to this lawsuit, he was in jail and still awaiting trial on pending criminal charges. (Doc. No. 2 at 3.) A pretrial detainee's conditions of confinement claim is governed by the standard set out by the United States Supreme Court in Bell v. Wolfish. 441 U.S. 520 (1979); Stearns v. Inmate Services Corp., 957 F.3d 902, 907 (8th Cir. 2020). As announced in Bell, pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment from conditions of confinement that amount to punishment. 441 U.S. at 535. Conditions amount to punishment under Bell if the conditions are intentionally punitive, were not reasonably related to a legitimate governmental purpose, or were excessive in relation to that purpose. Stearns, 957 F.3d at 907. Mere negligence is insufficient to support a claim under Bell. Id. at 908 n.5.

Plaintiff testified at his deposition that Defendant Merritt was negligent on the day Plaintiff was attacked. (Doc. No. 40-1 at 40:9-40:18). Negligence is not enough to support a claim under Bell. Nothing in Plaintiff's Amended Complaint, deposition testimony, or in any other evidence of record indicates that the presence of the cleaning supplies in the open pod, the open bean hole,

or the presence of Plaintiff's attacker in the open areas was in any way punitive.    Plaintiff has not established an underlying conditions of confinement violation.

### b.    Failure to Protect

Because Plaintiff was a pretrial detainee at the time of the attack, his failure to protect claim falls under the Fourteenth Amendment "which extends to detainees at least the same protections that convicted prisoners receive under the Eighth Amendment."    Perry v. Adams, 993 F.3d 584, 587 (8th Cir. 2021).    The Court of Appeals for the Eighth Circuit considered failure to protect in the context of inmate-on-inmate assault in Vandevender v. Sass, 970 F.3d 972, 975-76 (8th Cir. 2020).    The Court explained that "[a] prison official 'violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates.'"    Id. at 975 (internal citation omitted).

A failure to protect claim "has an objective component, whether there was a substantial risk of serious harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk."    (Id.).    For a defendant to be found liable, "'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id.    (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

To establish deliberate indifference in failing to protect from assault by another inmate, a plaintiff "'must show that he was faced with a pervasive risk of harm and that the prison officials failed to respond reasonably to that risk.'"    Id. at 977 (internal citation omitted).    The Court of Appeals for the Eighth Circuit has stated that

> a "pervasive risk of harm" may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror in the particular institution.    It is enough that violence and sexual assaults occur with sufficient frequency that prisoners are put in

reasonable fear for their safety and to reasonably apprise prison officials of the existence of the problem and the need for protective measures.

Id.

Plaintiff testified at deposition that he was surprised by the attack—he had "no reason at all to believe that was going to happen[.]"  (Doc. No. 40-1 at 20:2-20:25).   Plaintiff also testified that he had no knowledge of any other inmate being hurt with a mop handle.   (Id. at 29:3-29:7). Additionally, Plaintiff testified that Defendant Merritt was negligent when he left the bean hole open.  (Id. at 40:9-40:18).   Plaintiff's deposition testimony precludes any finding of deliberate indifference.   Again, Plaintiff has not established an underlying violation.

### c.    Without Underlying Violation, Failure to Train or Supervise Claim Fails

Plaintiff alleged that Defendant Staley failed to train and supervise Defendant Merritt. Plaintiff has not established a policy or practice that led to the alleged violation of his rights.   As set out above, Plaintiff has not established an underlying violation—either through a conditions of confinement claim or a failure to protect claim.   Without an underlying violation of which Defendant Staley had knowledge, Plaintiff's claims against Defendant Staley fail.   Further, even if a violation occurred, under these circumstances Defendant Staley would be entitled to qualified immunity.

Plaintiff has not met proof with proof to establish facts in dispute that would preclude summary judgment in Defendant Staley's favor.   Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor).   Without an underlying violation by a Lonoke County employee, no reasonable jury could find Defendant Staley liable for

failure to train or supervise.   <u>Whitney v. City of St. Louis, Missouri</u>, 887 F.3d 857, 861 (8th Cir. 2018).   Accordingly, Defendant Staley's Motion should be granted.

Assuming that Judge Baker adopts the pending Recommendation regarding Defendants McCoy, Flud, and Merrit, the only surviving claims are against Defendant Staley.    Assuming that Judge Baker adopts this Recommendation, all claims in this case will have been dismissed. Accordingly, the Court will also recommend that this case be dismissed.

## V.    Conclusion

IT IS, THEREFORE, RECOMMENDED that:

1.  Plaintiff's Motion to Correct Complaint (Doc. No. 41) be DENIED.

2.  Defendant Staley's Motion for Summary Judgment (Doc. No. 31) be GRANTED.

3.  Plaintiff's claims against Defendant Staley be DISMISSED with prejudice.

4.  This case be DISMISSED.

Dated this 14th day of February, 2024.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE